Ex parte TOKIO MARINE & FIRE IN-
SURANCE COMPANY, Ltd.,
Petitioner.

Ex parte AETNA CASUALTY & SURE-
TY COMPANY et al., Petitioners.

Nos. 20225, 20226.

United States Court of Appeals
Fifth Circuit.

Aug. 29, 1963.

John K. Meyer, Houston, Tex., for petitioners.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

### JOHN R. BROWN, Circuit Judge.

As a preliminary matter in advance of the trial never yet had, this case is again with us for the third and, we hope, the last time.[1] Now well on its way toward matching other celebrated protracted causes [2] which proves the wisdom of Justice Story's famed aphorism that "[I]t is for the public interest and policy to make an end to litigation * * *" so that "* * * suits may not be immortal, while men are mortal," Ocean Ins. Co. v. Fields, 18 Fed.Cas. p. 532; Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1963, 320 F.2d 594, the case has come to us twice from Texas and this time from Louisiana as two courts of a single system and Circuit find themselves the instrument of rivalry which seems to say that here and only here may justice be done. Ironically each is a district having a high, if not the highest, caseload in the entire federal system.

While the two prior decisions, see note 1, supra, dealt with and finally affirmed the determination by the Texas court that the limitation of liability proceeding should go forward there, not in Louisiana as Admiralty Rule 54 would permit, this case seeks mandamus to prevent the actual litigation of the very same case in Louisiana. Thus the rivalry persists. Worse, if Judge Ainsworth is correct in his approach, the case not yet tried will be twice tried and, we fear, twice appealed with the lurking possibility that it might be twice decided in two different ways. Cf. Lincoln National Life Insurance Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110 (en banc), former decision, 1959, 269 F.2d 171.

How so much could come from so little is due in no small measure to the Louisiana Direct Action Statute [3] and the tenacity of persistent proctors who since 1954 have hoped longingly for the day in which the 4–1–4 riddle of the Jane Smith (Maryland Casualty Co. v. Cushing), 1954, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, 1954 A.M.C. 837, could be authoritatively solved.

The libel filed in the Louisiana District Court is for the very same collision and occurrence which forms the subject of the Texas limitation proceedings, see note 1, supra. The limitation restraining order, of course, forbids libelant Humble Oil & Refining Company from pursuing the Tug ISABEL S. GARRETT, or her owner. This is circumvented by Humble's libel brought against underwriters on the Tug ISABEL S. GARRETT's tower's liability policy.[4]

By appropriate exceptive allegations, Tokio and Aetna separately challenged the jurisdiction of the Louisiana court. As to both, the attack was the basic constitutional one that essential uniformity of the admiralty would be thwarted by permitting a direct action against the Tug's liability underwriters in view of the pendency of the Texas limitation of liability proceedings. As to Tokio, there was the additional ground that the court lacked jurisdiction over the person of the respondent since its activities did not amount to the "transacting of business" in Louisiana by a foreign insurer. LSA–Rev.Stat. Art. 22:1253 subd. A. Judge Ainsworth denied these motions and thereafter declined to certify the ques-

---

1. In Re Humble Oil & Refining Co., 5 Cir., 1962, 306 F.2d 567; Humble Oil & Refining Co. & Cargo Carriers, Inc. v. Bell Marine Service, Inc., 5 Cir., 1963, 321 F.2d 53.

2. A leader would be The Pocahontas, 2 Cir., 1940, 109 F.2d 929, 1940 A.M.C. 351, 111 F.2d 451, 1940 A.M.C. 685, cert. denied Eagle Transport Co. v. United States, 310 U.S. 641, 60 S.Ct. 1088, 84 L. Ed. 1409, 1940 A.M.C. 860, which in 1940 finally disposed of a collision occurring in 1917.

3. LSA–Rev.Stat. Art. 22:655 (1958).

4. Other respondents such as the owner of the barges, the wharfinger, etc., are named. We are concerned solely with Tug ISABEL S. GARRETT, her owners, operators, agents, and underwriters.

tions as an interlocutory appeal under 28 U.S.C.A. § 1292(b). The consequence is, of course, that so long as these orders stand, the merits of the collision case will proceed to trial in Louisiana against parties (liability underwriters) standing in the shoes of the tug owner even though we have recently ruled that the proceedings should be tried in Texas. To prevent this, the underwriters seek extraordinary relief in substance (a) directing Judge Ainsworth to vacate his orders, or (b) prohibiting the Judge from exercising jurisdiction over them until final disposition of the limitation proceeding, or (c) directing that the Judge certify the questions under 28 U.S.C.A. § 1292 (b).

 At the outset, we may readily dispose of the request that we mandatorily order certification under § 1292(b). The occasions for that relief would indeed be rare, if not superfluous. Having said as much, we nevertheless think that as to the basic constitutional issue of the supremacy of admiralty, Judge Ainsworth reads § 1292(b) much too narrowly. We do not believe it does any good to echo epithets uttered by others that § 1292(b) is to be "sparingly applied," Milbert v. Bison Laboratories, Inc., 3 Cir., 1958, 260 F.2d 431, 433. Following very practical considerations, we have on a number of occasions allowed interlocutory appeals. Ex parte Deepwater Exploration Co., 5 Cir., 1958, 260 F.2d 546, on remand, Deepwater Exploration Co. v. Andrew Weir Ins. Co., E.D.La., 1958, 167 F.Supp. 185; Ex parte Watkins, 5 Cir., 1958, 260 F.2d 548, certification held inadequate, 5 Cir., 271 F.2d 771, 76 A.L.R. 2d 1113; Jewell v. Grain Dealers Mutual Ins. Co., 5 Cir., 1959, 273 F.2d 422; Ex parte Underwriters at Lloyd's London (Gulf Shipside Storage Corp. v. Underwriters at Lloyd's London), 5 Cir., 1960, 276 F.2d 209. Pointing out that "[e]ach application is to be looked at then in the light of the underlying purpose reflected in the statute," Hadjipateras v. Pacifica,

S.A., 5 Cir., 1961, 290 F.2d 697, 702, 1961 A.M.C. 1417, we have allowed full use of this effective device where there is "a controlling question of law" and "an immediate appeal" may "materially advance the ultimate termination of the litigation." For these purposes, "the litigation" is here the Louisiana libel against the tug's underwriters. If the underwriters are correct—and we may assume without deciding the if is a big one—then the Constitution forbids the further prosecution of the case against them in Louisiana. An authoritative decision would not only "materially advance" the ultimate disposition of "the litigation," it would terminate it altogether. On that hypothesis, to require the parties to go through a trial before a court lacking jurisdiction would be both expensive and senseless for no matter what facts were developed on the trial, the Constitution would forbid the adjudication there. Nothing in the legislative history [5] requires any such artificial result. Likewise, mandamus or prohibition is singularly inappropriate to determine the correctness of a controlling question of law "as to which there is substantial ground for difference of opinion." These extraordinary writs are generally directed toward situations so bold and plain that the trial Judge's actions are examined in the light of the presence or lack of an abuse of discretion. Merely to decide a question of law incorrectly is certainly not an abuse of discretion. And yet the District Judge's refusal to certify this substantial and controlling question of law puts the Appellate Court in the position of either acquiescing in a useless trial and later appeal or the equally dubious position of saying that the trial Court's error is so gross that it amounts to an abuse of discretion. On this latter aspect, no one could say Judge Ainsworth was that wrong considering the likelihood that the Supreme Court does not itself know exactly what it meant to hold or now holds under Jane Smith.[6]

5. See 1958 U.S.Code Congr.Adm.News, pp. 5260–5261.

6. Gilmore & Black, Admiralty, § 10–31, p. 715 (1957) summarize it: "Because of

■ While we think that certification would have been appropriate and following our prior practice we might now invite the parties to resubmit it for such certification, see In Re Humble Oil & Refining Co., 5 Cir., 1962, 306 F.2d 567, we think that in the interest of expediting the disposition of the case on its merits, we should not do so here. At the same time we decline to consider finally whether the peremptory writs of mandamus or prohibition should be entered.

Again we take a practical view. We have now determined, see note 1, supra, that Judge Ingraham had ample basis for concluding that the limitation proceeding should be tried in Texas, not transferred to Louisiana. It would certainly stretch any notions of "discretion" for the Court of Appeals to hold that each of two separate District Courts within the same Circuit could properly try the very same case in each District. In other words the determination that it is within the District Court's discretion to require the case to be tried in Texas automatically excludes the propriety of the Louisiana Court determining within its discretion that the case should be tried in Louisiana.

■■ Of course that supposes that the case in Louisiana is the same case as that in Texas. Of course it is in fact and all of the parties know it. Whether

the Court's extraordinary division, it is impossible to say what the Cushing case stands for, beyond the fact that it presumably establishes a procedure to be followed by lower courts in handling similar cases until the Supreme Court further clarifies the issues."

Much water has spilled over the Supremacy dam since 1954, and there is little basis for describing the pool as crystal clear. See, e. g., Wilburn Boat Co. v. Fireman's Fund Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, 1955 A.M.C. 467; Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed. 2d 56, 1961 A.M.C. 1923; and on the analogous problem of constitutional applicability of state death statutes, "The sea of jurisprudence is hardly calm or placid * * *. There are undulating currents." Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F.2d 42, 47, n. 6, 1961 A.M.C. 1469; Emerson

it is the same case in law presents several aspects, only one of which we need now resolve. These include the question postponed in Jane Smith on the extent to which, if at all, the underwriter is liable in excess of the limited fund and the related question of whether liability *vel non* of the shipowner-assured may be tried in a forum other than the limitation proceeding. We ought not to muddy up those waters by attempting to divine what the Supreme Court might now say it might have meant by its 4–1–4 decision until such time as it becomes certain that the question is really presented. These iffy possibilities ought not to be anticipated in the theoretical abstract.[7] Byers v. Byers, 5 Cir., 1958, 254 F.2d 205; American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 5 Cir., 1960, 280 F.2d 453. But apart from these unusual admiralty consequential problems, it is certain that in the eyes of the law this is the same case vis-a-vis Humble, as libelant, and the Tug ISABEL S. GARRETT and her underwriters. What is sauce—either land-based, amphibious or nautical—for the goose is the same for the gander. National Rag & Waste Co. v. United States, 5 Cir., 1956, 237 F.2d 846. And we are now clear that the direct action insurer stands as a party-litigant in exactly the same shoes as the assured.[8]

v. Holloway Concrete Products Co., 5 Cir., 1960, 282 F.2d 271, 281–282, n. 9, 10, 11 (dissenting), 1961 A.M.C. 1484, recasting the shifting vote of the Justices.

7. The Texas Court might hold the Tug ISABEL S. GARRETT at fault, find privity and knowledge and thereby deny limitation of liability. In that event the underwriters presumably would be liable for the full amount of the policy dollar limits, and appropriate remedies are available in Texas or Louisiana to secure satisfaction. If the Texas Court finds no fault on the part of the Tug, or finding fault grants limitation, then the pure question of law will be presented for resolution in the Louisiana case as to whether supremacy of the admiralty would permit recovery from liability underwriters.

8. The Louisiana Direct Action Statute emphasizes that it is the liability of the

Degelos v. Fidelity & Casualty Co., 5 Cir., 1963, 313 F.2d 809; Globe Indemnity Co. v. Richerson, 5 Cir., 1963, 315 F.2d 3, n. 2; Maryland Casualty Co. v. Kador, 5 Cir., 1955, 225 F.2d 120.

Since we have the power under 28 U.S.C.A. § 1651 to issue mandamus or other extraordinary writs, we obviously have the power to issue less strenuous relief. We think that the unusual circumstances of this record call for such moderation. We reiterate what we recently said, see note 1, supra, that the case should be tried. It should, we held, be tried in Texas. The proceedings in Louisiana insofar as they are against or relate to the underwriters of the Tug ISABEL S. GARRETT, her owners, operators, agents, etc. should therefore be stayed until the limitation proceedings in Texas are finally determined.

Leave to file writs of mandamus—prohibition denied, but stay entered.

assured which counts. See, e. g., "It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured * * *."

"It is also the intent of this Section that all liability policies * * * are executed for the benefit of all * * * persons * * * to whom the insured is liable; and * * * it is the purpose of all liability policies to give protection and coverage * * * for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy." As amended Acts 1958, No. 125.

The underwriters stress that the tower's liability policy provides that in actions brought by a third party, such third party "shall not be entitled to recover in respect of any liability to which the Owners of the Vessel as such would not be subject." Cf. Nardelli v. Stuyvesant Ins. Co., 5 Cir., 1959, 269 F.2d 592, modifying 258 F.2d 718; see 286 F.2d 600.