**CROWN ZELLERBACH CORPORATION, Plaintiff-Appellant Cross-Appellee,**

v.

**INGRAM INDUSTRIES, INC., et al., Defendants-Appellees,**

and

**London Steam-Ship Owners' Mutual Insurance Association, Limited, Defendant-Appellee Cross-Appellant.**

No. 82–3749.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1984.

Opinion on Granting Rehearing En Banc Jan. 21, 1985.

---

Taylor, Porter, Brooks & Phillips, William Luther Wilson, Baton Rouge, La., for plaintiff-appellant cross-appellee.

Monroe & Lemann, Nigel E. Rafferty, Richmond M. Eustis, New Orleans, La., for Ingram Industries.

Terriberry, Carroll, Yancey & Farrell, Benjamin W. Yancey, New Orleans, La., for London S.S. Owners.

Before BROWN, THORNBERRY, and TATE, Circuit Judges.

PER CURIAM:

What took 16 years for our answer in *Nebel Towing*[1] to the enigmatic 4–1–4 riddle of the *Jane Smith*[2], is now back again in part 13 years later. Based presumably on *Nebel Towing* the District Court granted judgment against the excess P & I Underwriter for nearly $2,000,000 in excess of the owner's judicially declared limited liability. Faithful as we are and must be to *Nebel Towing*, the Court, by divided vote holds that the trial court was correct in this judgment and we affirm as to this issue.[*] As to all other issues the Court unanimously affirms the judgment of the District Court.

This appeal grows out of an allision between the tow in tow of the tug F.R. BIGELOW and Crown Zellerbach's (CZ) water intake structure on the Mississippi River above Baton Rouge. Involved also was the tug's (and owners') maritime limitation of liability proceeding in which CZ brought a Louisiana direct action against the prime and excess P & I Underwriters of the vessel owner/operator. After trial, the District Court held that Ingram, the tug owner/operator, was liable, but was entitled to limit its liability to the value of the vessel and the pending freight. The excess P & I underwriter was held liable for nearly $2,000,000 of the portion of the CZ's damages that exceeded the limited liability of the vessel owner. We find no error in the court's holdings (i) of no "privity or knowl-

1. *Olympic Towing Corp. v. Nebel Towing Co., Inc.*, 419 F.2d 230, 1969 A.M.C. 1571 (5th Cir. 1969) *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970); *see id.*, 419 F.2d at 238 (Brown, C.J., dissenting from denial of rehearing en banc).

2. *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, 1954 A.M.C. 837 (1954).

* Only this issue has precedential value. Local Rule 47.5 provides

> The publication of opinions that have no precedential value and merely decide particular cases on the bases of well-settled principles of law imposes needless expense on the public and burdens on the legal profession.

Pursuant to that Rule the Court has determined that the non-precedential portions of this opinion should not be published. The places at which the published opinion omits parts of the lengthy unpublished opinion are specifically indicated by an **.

edge" by the tug owner, (ii) the valuation of the vessel, (iii) the computation of CZ's damages, and (iv) the award of pre-judgment interest from a date later than the accident. However, the Court by divided vote determines that the District Court was free of error in holding the tug owner's underwriter liable beyond the dollar limits fixed, or ascertainable, in the P & I policy. Accordingly, we affirm.

### How it All Happened

On February 3, 1979, the tugboat F.R. BIGELOW owned (or bareboat chartered) by Ingram Industries, Inc. (Ingram), while pushing 15 loaded barges down the Mississippi River in heavy fog and rain, caused its forward lead barge to come into contact with and damage Crown Zellerbach's (CZ) water intake structure, on the Mississippi above Baton Rouge. Shortly after this incident, CZ began to repair the structure, but these repairs were interrupted on May 18, 1979, when another tugboat collided with the structure and damaged the remaining portion. The structure was not rebuilt in kind, but was rebuilt in a different form.

Suit was filed by CZ against the tugboat F.R. BIGELOW, and Ingram, her bareboat charterer, in April of 1979. Subsequently, the complaint was amended to include Cherokee Insurance Company, the prime P & I insurer of Ingram, with a policy limit of $1,000,000, and London Steam-Ship Owners' Mutual Insurance Association, excess P & I insurers of Ingram, with a deductible franchise of $1,000,000.

In its answer to the suit based upon the accident of February 3, 1979, Ingram, the chartered-owner/operator of the F.R. BIGELOW sought limitation of its liability to the value of the vessel plus freight then pending. 46 U.S.C. § 183. Ingram stipulated liability for striking the structure, and the issues of damages and limitation of liability were tried. Following trial, the District Court entered judgment in favor of CZ in the "total sum" of $3,948,210.31, with pre-judgment interest from December 11, 1980. The District Court granted Ingram's prayer for limitation of liability, valued the vessel at $2,134,918.88 and limited the owner's liability to that amount. Cherokee's prime P & I policy was for $1,000,000. In tabular form, the District Court decreed the total sum of CZ's judgment as follows:

| | | |
|---|---|---|
| (a) | Total Damages to CZ | $3,948,210.31 |
| (b) | Payable by Owner and Cherokee Prime P & I | $1,025,000.00 |
| (c) | Payable by Owner and London Steam Excess P & I | <u>1,109,918.88</u> |
| (d) | Owner's Limited Liability | <u>2,134,918.88</u> |
| (e) | Balance by London Steam Excess P & I | <u>**$1,813,291.44**</u> |

---

Following the judgment, Ingram and its two P & I underwriters made payments up to the limits of Ingram's fixed liability ($2,134,918.88).

On appeal, CZ raises several issues as errors in the District Court's judgment, all of which we affirm. London Steam-Ship Owners' Mutual Insurance Association challenges that portion of the District Court's judgment holding that underwriter liable for the amount ($1,813,291.44) of the plaintiff's claim over and above Ingram's fixed limited liability ($2,134,918.88). Affirming the District Court by a divided vote on that issue obviously warrants publication of our opinion.

**998**

### 1.
*Limitation of Liability* **

### 2.
*Limitation: Valuation of the Vessel* **

### 3.
*Effect of Stipulation of Damages* **

### 4.
*Pre-Judgment Interest* **

### 5.
*P & I Underwriter Liable in Excess Limited Liability Amount*

For its protection against claims for damage to piers and other fixed (non-vessel) structures, Ingram, as chartered owner of the tug BIGELOW had two P & I covers. The prime cover was with Cherokee, the amount of insurance being specified as $1,000,000. London Steam-Ship Owners' Mutual Insurance Association, Ltd. (London Steam-Ship), through A. Bilbrough and Company, as managers, dove-tailing Cherokee's cover with a deductible franchise $1,000,000 supplied an excess P & I cover in accordance with the Rules of the Association.

Without specific articulation of the reasons for its decision, the trial court—obviously feeling bound by *Nebel Towing*—held the P & I underwriter liable for approximately $2,000,000 more than the owner's limited liability.

Despite the dissent to the denial of rehearing en banc in *Nebel Towing* and criticism of that opinion [3] we are bound by that decision and to justify a different result in this case the Court would have to demonstrate that this case and the rationale presented here is different from that in *Nebel Towing*.

■ Unable to find any valid distinction, and bound by *Nebel Towing*, we are both

bound and persuaded that the District Court was correct in holding the P & I underwriter liable for this excess amount.

### Conclusion

The upshot is that the Court affirms the holding of the District Court.

AFFIRMED.

THORNBERRY, Circuit Judge, with whom TATE, Circuit Judge, joins, concurring specially:

While I agree the district court should be affirmed, I write specially to say why *Nebel Towing* is still the law and applies in this case.

In *Nebel Towing* we held that under the public policy of Louisiana expressed in its Direct Action statute, "limitation of liability under the federal statute is a personal defense which cannot be availed of by an insurer under Louisiana law." 419 F.2d at 238. We further found that "the Limitation Act was designed to assist the maritime industry and that it was in no way intended to benefit the insurance industry . . .; the status of insurer is not covered by the public policy underlying the Limitation Act." *Id.*

In *Nebel Towing* we found the Limitation Act to be a defense personal to the shipowner *because* it would be contrary to public policy to allow the insurer to reduce its liability solely on the basis of the ship-owner's statutory right to limit his liability. In this case London Steam-Ship is attempting to do indirectly, by means of a policy provision (Rule 8(i)), precisely what *Nebel Towing* held the insurer could not do directly.

■ Because it is contrary to Louisiana public policy for an insurer to reduce its liability to an amount less than the full P & I coverage solely on the basis of the ship-owner's right to limit his liability under the Limitation Act, Rule 8(i) is contrary to pub-

---

** Not to be published. See note * *supra.*

**3.** *See* Biezup & Abeel, *The Limitation Fund And Its Distribution,* 53 Tul.L.Rev. 1185 (1979); Buglass, *Limitation of Liability From A Marine Insurance Viewpoint,* 53 Tul.L.Rev. 1364 (1979);

Kierr, *The Effect Of Direct Action Statutes On P & I Insurance, On Various Other Insurances Of Maritime Liabilities, And On Limitation On Shipowner's Liability,* 43 Tul.L.Rev. 638 (1969).

lic policy. Therefore, Rule 8(i) is invalid and is *not* a valid, effective term and condition of the P & I coverage. The district court did not err.

JOHN R. BROWN, Circuit Judge, dissenting in part:

I concur fully in all of the Court's opinion except the holding that the P & I underwriter is liable in excess of the shipowner's limited liability.

First, I wish to emphasize that while I dissented with some fervor in *Nebel Towing*, 419 F.2d at 238, for the purposes of our present case (and all others like it) I accept the holding and rationale of *Nebel Towing*. In a nutshell my present dissent is the simple one: *Nebel Towing* dealt solely with the contention that the P & I underwriter is entitled to the shipowner's *statutory* right to limit liability. Here the claim is quite different: the P & I underwriter is claiming only that, as prescribed by the Louisiana Direct Action statute, the terms of its own insurance policy limits maximum liability to the dollar amount for which the shipowner-assured would be liable on its successfully maintaining the right to limitation of liability. In *Nebel Towing* the underwriter was claiming the *statutory* right of the assured; in our present case, it is claiming only the limitation of the insurance policy defense itself. I sum it up as follows.

In *Nebel Towing* the P & I policy did not by its terms limit liability to what the vessel owner's limited liability would be. That meant that the P & I underwriter in its effort to limit its liability had to contend that it, as the insurer, had a right to claim the vessel owner's *statutory* right to limi-

tation of liability. My subsequent analysis of the *Nebel Towing* opinion I think bears this out.

In sharp contrast to that situation, here the London Steam-Ship "excess" P & I policy by Rule 8(i) does have a policy term which limits its liability to that of the owner's limited liability. This is a *policy*, not *statutory* defense. The P & I insurer is not claiming the owner's *statutory* right to a shipowner's limited liability, but merely the right to assert its *policy* defense.

Such an issue was not the subject of, or involved in, *Nebel Towing* so we are not constricted by that decision in the independent adjudication by this panel.

Without so much as even a genuflect to *Nebel Towing*, *supra*, the trial court—in a sort of everyone knows a P & I underwriter cannot obtain the benefit of the assured's right to shipowner's limitation of liability—held the P & I underwriter liable for nearly $2,000,000 more than the owners' limited liability.[1]

By the deposition of John Hawkes, director of Bilbrough, it is uncontradicted that London Steam-Ship, the "Club," is an association composed of a number of members, all of whom are shipowners, who, "severally and individually, not jointly nor in partnership, nor the one for the other of them, but each only in his own name" agree to protect and indemnify *each other* in respect of the vessel entered for protection and indemnity risk in accordance with the Rules.

The deposition of Hawkes—a director of Bilbrough—tracing the history of London Steam-Ship rules from those in 1881–82[2] to

---

**1.** The consequence of the trial court's non-articulated adoption of *Nebel Towing* is demonstrated by the fact that under the prime P & I policy, Cherokee's liability is limited to the $1,000,000. The trial court held P & I underwriter *Cherokee* (and owner) liable for $1,000,000 only (*see* item (b) in table on damages p. 997). That would also have been the result in *Nebel Towing*. There the P & I policy liability limit was $175,-000. Had the victim's damages (which had not yet been fixed) exceeded $175,000, there is no indication that this Court would have granted

recovery against the P & I underwriter in excess of the fixed dollar limit of the policy.

This means that, as in *Nebel Towing*, the Court accepts the idea that a dollar limitation is acceptable, but one in verbal, ascertainable terms is not.

**2.** The 1881–82 Rule 15 provided:

No Member shall, under any circumstances, be entitled to claim under these rules, in respect or in consequence of any one accident, or event, or occurrence, more than £ 30 per ton exclusive of costs and charges, upon the

1952–53 and then to those in 1955–56 reflected how the problem of the dollar (pound Sterling) limits of the insurance was recognized.

On reaching the financial condition in which the Association could extend its liability and without the limitation being and expressed in a specific monetary amount per ton (or tons entered), the Association became faced with the problem of determining what, how and in what manner its total liability exposure could be expressed. Beginning in 1955—long before *Nebel Towing*—this is handled by Rule 8(i):

> When ·a Member for whose account a ship is entered in this Class, is entitled to limit his liability, the liability of this Class shall not exceed the amount of such limitation.... [3]

Since there can be no question that this—Rule 8(i)—is one of the "... lawful conditions of the policy or contract," it brings us face to face with the critical provision of the Louisiana Direct Action Statute [4] that "any action brought hereun-

---

entered registered tonnage of the ship in respect of which such claim shall have arisen; and no ship shall at any one time be entered for protection for more than 3,000 tons.

This was continued in the 1952–53 Rules (see Rule 8(h) ) except that it deleted the maximum tonnage of 3,000 tons.

**3.** Rule 8(i) continues to cover the situation in which a vessel is entered for part, not full, tonnage:

> ... or, if the ship is not entered for her full tonnage, such proportion of the said amount as the entered tonnage bears to the gross register tonnage....

**4.** La.Rev.Stat.Ann. 22:655 plainly states:

> It is the intent of this Section that any action brought hereunder *shall be subject to all of the lawful conditions of the policy or contract and the defenses* which could be *urged by the insurer* to a *direct action brought by the insured,* provided the terms and conditions of such policy or contract are not in violation of the laws of this State.
>
> ⁕    ⁕    ⁕    ⁕    ⁕    ⁕
>
> ... [t]he injured person or his or her survivors or heirs ..., at their option, shall have a right of direct action against the insurer *within the terms and limits and of the policy....*
>
> ⁕    ⁕    ⁕    ⁕    ⁕    ⁕
>
> *Nothing contained* in this Section *shall be construed to affect* the *provisions* of the *policy* or

---

der shall be subject to ... the *defenses which could be urged by the insurer to a direct action brought by the insured...."* (emphasis added).

We start with our decisions which today are still very intact. For example, *see Degelos v. Fidelity and Cas. Co.,* 313 F.2d 809 (5th Cir.1963) [5] and *Tokio Marine & Fire Insurance Co. v. Aetna Cas. Co.,* 322 F.2d 113, 1964 A.M.C. 308 (5th Cir.1963). [6]

Not only is the Louisiana Direct Action Statute so precise, so have been the decisions of her courts: there must be a legal liability on part of the assured for the insurer to have a direct action liability. In *Burke v. Massachusetts Bonding & Insurance Co.,* 209 La. 495, 24 So.2d 875 (1946) the question was whether under the law of Mississippi a wife had a right of action against her husband for a tort committed against her in Mississippi for which she can recover against the liability insurer in Louisiana. The Supreme Court stated:

> The statute does not give plaintiff any more rights than she has under the law

---

contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be *subject to all of the lawful conditions of the policy or contract* and the *defenses* which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

(Emphasis added).

**5.** *Under the Direct Action Statute,* the case may proceed against the insurer, but *liability depends on legal liability of the assured.* Whether, as the Act permits, the assured is joined with the insurer, *the standard for recovery is identical.*

*Degelos,* 313 F.2d 809, 815 (emphasis added).

**6.** In *Tokio* the Court stated:

> And we are now clear that the direct action· insurer *stands as a party-litigant* in exactly the *same shoes as the assured....* The Louisiana Direct Action Statute emphasizes *that it is the liability of the assured which counts.* See, *e.g.,* "It is the intent of this Section that any action brought hereunder shall be *subject* to *all of the lawful conditions of the policy or contract* and the *defenses which could* be *urged by the insurer to a direct action brought* by the *insured...."*

322 F.2d at 116–17 & n. 8 (emphasis added).

of Mississippi. It only furnishes her with a method to enforce in Louisiana whatever rights she has in Mississippi. Since she has no cause of action under the law of Mississippi, necessarily Act No. 55 of 1930 confers upon her no cause of action in Louisiana. The mere fact that under the statute plaintiff was able to obtain jurisdiction against her husband's liability insurer in a direct action in this State does not create, as against her husband, *or as against her insurer*, a substantive cause of action that does not exist under the law of the State where the wrongful act occurred.

24 So.2d at 877 (emphasis added). *See also, Hebert v. General Accident Fire & Life Assurance Corp.*, 48 So.2d 107, 108 (La.Ct.App.1950):

Neither the liability policy on which this suit is based nor Act No. 55 of 1930 makes the insurance company liable merely because of the occurrence of the accident. There is liability in the insurer only if the insured—plaintiff's husband—was guilty of negligence which caused the accident.

Although the trial court, having been *Nebel*-awed, presumably thought that anything which forbade 100% recovery was somehow outlawed, it is plain that application of any such approach would produce absurd results which even the most potent *Nebelizer* would protest.

For example—and there are literally hundreds in the some-time esoteric world of marine insurance—consider this particular P & I cover by the London Steam-Ship Club. By provision 7(b) of the Association Rules liability for damage to any other "ship, boat or craft," is excluded insofar as it is not covered by the usual hull policy with Running Down Clause.[7]

Suppose a Louisiana registered steam vessel of 300 tons entered for P & I risk with the London Steam-Ship Club and also covered by the typical marine Hull policy is in a collision in Louisiana coastal waters (not on the Continental Shelf) and severely damages an ocean-going barge. The barge owner files a joint admiralty suit against the offending ship and the London Steam-Ship Club under the direct action statute seeking $100,000 in hull damages. Obviously, this being the classic case since at least 1836 of a liability insured under the ¾ Running Down Clause[8] of the hull policy, the P & I underwriter would have no liability for such hull damages. Under no stretch of the imagination—or the importation of quaint civil law codal provisions—would there be any possible basis for holding the P & I underwriter liable for such

---

**7.** See Clause 7(b): Excludes liability for:

Loss of or damage to any other ship, boat or craft, or property on board such other ship, boat or craft, or damages or expenses payable in consequence of or arising out of such loss or damage, including such part of loss or damage in respect of cargo in the entered ship as the owner of such other ship, boat or craft is legally entitled to recover from the Member, so far as the same is NOT covered by the usual form of Lloyd's Policy with the running down clause attached....

This exclusion was not accidental. It has deep roots in maritime insurance history. *See* Palmer, *Liability "As Owner of the Vessel Named Herein:" Coverage of Liability of Non-Owners,* 43 Tul.L.Rev. 481, 501 (1969):

British marine protection and indemnity insurance offers the vessel owner and demise charterer coverage for damage caused by the entered vessel for collision damage to the extent of one-fourth (¼) of the assured's total liability and also to the extent to which the assured's liability exceeds the amount recoverable under the vessel owner's Hull and Machinery and excess liabilities insurance.... Under a typical American protection and indemnity policy, the underwriter will cover the liability of the owner of the entered vessel to another vessel if it is not covered by the American Institute TIME (HULLS) form of policy....

And, *see also* Reynardson, *The History and Development of P & I Insurance: The British Scene,* 43 Tul.L.Rev. 457, 470, 467 (1969):

[a]s we have seen, the Protecting Clubs were formed largely in order to protect owners against collision risks in excess of those recoverable under the ordinary marine policies....

\* \* \* \* \* \*

And so the first Protection Society was formed to cover "extra risks not covered by ordinary marine policies on ships with a collision or running down clause therein."

**8.** *See,* Schumaker, *The Hull Policy: An Introduction and Brief History,* 41 Tul.L.Rev. 233, 241 (1967).

damages. Does anyone suppose that any Louisiana court, or one sitting *Erie*-bound as a federal court, would somehow conjure up the idea that this collision-liability-exclusion (*see supra* note 7) is "personal" and hence unavailable to the P & I underwriter as an absolute threshold defense?

On the other hand, suppose the same vessel, entered in the P & I risks of the Club, but also insured with traditional hull cover with Running Down Clause[9] smashes into a dock. Here the claimant, unaware of the security he can obtain by a suit *in rem*, under 46 U.S.C. § 740, files his joint suit against the owner and the hull underwriter—who is, after all, a liability insurer. Would anyone suppose that the usual exclusion of non-vessel damage[10] would be ignored, overruled, or rejected by a Louisiana court or a Louisiana-based federal court?

Before analyzing the impact which these thoughts should have on whether *Nebel Towing* drives this Court to rejecting the

ascertainable dollar limit to the P & I underwriters commitment, two further cases warrant comment. The first is *Alcoa Steamship Co. v. Charles Ferran & Co.*, 383 F.2d 46, 1967 A.M.C. 2578 (5th Cir. 1967), *cert. denied*, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968).[11] There this Court expressly limited the direct action insurer's liability to the shipyard's $300,000 Red Letter Limitation Clause.

The other case is *Ta Chi Navigation (Panama) Corp. S.A. v. United States*, 728 F.2d 699 (5th Cir.1984).[12]

If—and the if cannot be a very big one— both Louisiana and local federal courts would recognize these policy defenses as complete defenses to these supposed Louisiana direct action suits against the insurer, the question arises whether there is anything about the wording of Rule 8(i) (see *supra* text at p. 1000 and note 3) which limits liability to the liability of the vessel owner in a successful limitation proceeding which would compel a different result. On

9. To show the complementary nature of P & I and hull insurance, see Proviso 8(a) of the Association Rules:

   8(a) Every ship entered for protection and indemnity in this Class shall, during the full period of entry, be deemed to be insured for her full value by the usual form of Lloyd's Policy with the Institute Time Clauses Hulls including the Running Down Clause attached....

10. *See* Wright, *Liabilities (1) Arising out of Collision with Another Vessel and Not Covered by the Hull Policy, (2) For Damage to Another Vessel or Her Cargo, Not Caused by Collision with the Insured Vessel, (3) For Damage to Any Object or Property Except Another Vessel or Her Cargo*, 43 Tul.L.Rev. 576 (1969). A typical exclusion for non-vessel property damage in hull running down clause is:

    Provided always that this clause shall in no case extend to any sum which the Assured, or the Charterers, or the Surety, may become liable to pay or shall pay for removal of obstruction under statutory powers, for injury to harbors, wharves, piers, stages, structures of any other objects (excepting Vessels and property thereon), consequent on such collision, or in respect of the cargo, baggage or engagements of the Insured Vessel or for loss of life, or personal injury.

11. Kierr, *The Effect of Direct Action Statutes on P & I Insurance, On Various Other Insurances of*

*Maritime Liabilities, and on Limitation of Shipowners' Liability*, 43 Tul.L.Rev. 638, 664–65 (1969) referring to *In re* Independent Towing Co., 242 F.Supp. 950 (E.D.La.1965), and citing this case, summed it up thusly: "Limitation by contract, as distinguished from *statutory* limitation, is not a personal defense and may be asserted by the insurer." (Emphasis added).

12. Travelers Indemnity Company was surety on an *ad interim* stipulation in a limitation of liability proceeding. In turn it had received an indemnity agreement from the hull underwriters of the *Ta Chi* vessel. This indemnity agreement provided however:

    The extent of our obligation under this indemnity shall not exceed our liability in accordance with the terms of the policies of insurance....

    It was uncontradicted that the *Ta Chi* hull policy (American Institute Hull Clause (January 1970)) expressly provided in the Collision Clause Amendment:

    Provided that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

    (d) Cargo or other property on or the engagements of the vessel.

    Recognizing, without deciding, the dubious character of the indemnity claim against hull underwriters for cargo damage, this Court affirmed denial of Rule 60(b) relief.

the face of the Rule, it is plain and unequivocal. It does not speak in terms of possibilities or even probabilities. It speaks, not in terms of the hypothetical power of a non-vessel owner to claim the benefit of shipowner limitation of liability (*see infra* note 17, quoting *Nebel Towing,* 419 F.2d at 236 n. 22), rather, it speaks in terms of an insured who is entitled to limit his liability (*see supra* text at p. 1000 and note 3 (Rule 8(i) ). Nothing is left to speculation. The trial court, on a full trial—and approved by us—has judicially determined that Ingram is entitled to limitation and has fixed that sum precisely to $2,134,918.88.

The only thing possibly standing in the way of this sensible result is *Nebel Towing.* This brings us face to face with our prior celebrated opinion in *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230, 1969 A.M.C. 1571 rehearing denied, 419 F.2d 238 (5th Cir.1969) (en banc), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970). The *Nebel Towing* court precisely prescribed the issue:

> The appellants and the amicus curiae launch a broad scale and many-faceted attack on the district court's holding that Nebel's insurer could not take advantage of Nebel's *right* to *limit* its liability.

419 F.2d at 234 (emphasis added).

The Court was not dealing with a condition or provision of the policy which limited insurer's liability. Rather, it was dealing with the contention that the insurer was entitled to urge the vessel owner's *statutory* right to limit its liability.[13]

After first disposing of the question reserved in the *Jane Smith, supra,* by holding that there was no unconstitutional conflict between the Louisiana Direct Action Statute and the Federal Limitation of Shipowners Liability Act and the likelihood of increase in actual cost to a vessel owner from higher insurance premiums (see part II) 419 F.2d at 234,[14] the Court (part III)[15] proceeded to determine the P & I underwriter's "remaining contentions [which] depend upon the interpretation of Louisiana law." 419 F.2d at 236. First, the Court on the basis of *Coleman v. Jahncke Service, Inc.,* 341 F.2d 956, 1965 A.M.C. 535 (5th Cir.1965), *cert. dismissed,* 382 U.S. 967, 86 S.Ct. 525, 15 L.Ed.2d 463, *cert. denied,* 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966) rejected out of hand the claim that the no-action clause of the P & I policy forbad direct suit on the policy prior to judgment or payment by the assured. 419 F.2d at 236.[16]

Since London Steam-Ship Rule 8(i) (*see supra* text at p. 1000 and note 3, and *infra* note 18) has been the target of CZ's attack that *Nebel Towing* requires a like result here, it is important to point out here that the only mention of somewhat similar language in the P & I policy in *Nebel Towing* was in the Court's note 22. Note 22 was in response to the P & I underwriter's contention that the policy did not permit a direct

---

**13.** This is amplified by the contentions made in the petitions for rehearing to the panel's opinion:

> 3) The District Court erred in awarding judgment against the underwriters of the M/V G–H, in excess of the limitation value, on the basis of the Louisiana Direct Action Statute....

(Appellant's brief)
And the amicus American Institute of Marine Underwriters:

> 3. Did the district court err in holding that as a matter of Louisiana law, the *limitation of liability accorded to the owner* of the tug G–H was a personal defense, not available to the owner's marine insurer sued directly?

(Emphasis added).
And even more important is the losing appellant's petition for rehearing en banc:

II.

> The Court erred in holding that the *defense of limitation of liability is* a personal defense of the vessel owner and, therefore, may not be availed of by the insurer.

III.

> The Court erred in holding that the vessel owner is not denied *the full benefit of the Limitation Act* in the event the insurer is held liable beyond the amount of the limitation fund.

**14.** London Steamship does not attack these holdings.

**15.** *See Nebel Towing,* 419 F.2d at 236.

**16.** London Steam-Ship, accepting the proposition that the no-action clause is no defense, does not challenge this holding.

action and the Court mentioned that "the appellants" refer to several clauses of the policy.[17]

This suppositious condition (*see supra* [i] note 17) could have had no significance in *Nebel Towing* since it was uncontradicted that the insured vessel was under bareboat charter to the assured which the Court properly considered as an owner. *See* 419 F.2d 230, 231 n. 1.

I have obtained and carefully considered all of the record and briefs in *Nebel Towing* including the P & I policy. The P & I policy expressly provided (line 9) that the "amount hereby insured [is] $175,000 as per schedule [of vessels by name as covered], [and] the underwriter ... hereby undertakes to pay up to the amount hereby insured ... such sums as the assured, as owner of the [vessels covered] shall become legally liable to pay and shall have paid on account of [enumerated liabilities]."

Unlike London Steam-Ship cover which under Rule 8(i) expressly provided that "the liability" should not exceed the amount of the shipowner's limitation[18], the *Nebel Towing* P & I policy made no reference whatsoever to liability being limited in terms of a shipowner's limitation of liability, but rather expressly provided that the "amount hereby insured" is $175,000.

The only reference in the policy to liability being stated in terms of shipowner's limitation of liability was the clause (lines 99–102 of the policy) quoted in *Nebel Towing*, 419 F.2d at 236 n. 22 and set forth in note 17 *supra:*

It is expressly understood and agreed if and *when* the assured has any interest

*other than as a shipowner* in the vessel named herein, in no event shall this Company be liable hereunder to any greater extent *than if the assured were the sole owner and entitled* to petition for limitation of liability in accordance with present and future law.

(emphasis added).

Thus, in *Nebel Towing* there was nothing in the P & I policy which by words or implication, would limit the P & I underwriter's liability to the owner's statutory limitation of liability. Nor was the P & I underwriter making any such claim. In other words, the sole question before the Court and asserted by the P & I underwriter was whether by reason of the Louisiana Direct Action Statute the P & I underwriter had the *right* to claim the benefit of the owner's federal *statutory* right to shipowner's limited liability.

The case, therefore, did not involve a claim that under the terms of the P & I policy there was no liability for amounts in excess of the vessel owner's limited liability. What, and all, it involved was whether, under the Louisiana Direct Action Statute, this non-policy defense of the owner's *statutory* right to limit liability was a defense, and if so, whether it was or was not "personal" to the assured. In other words, the P & I underwriter was contending, not that the terms of the P & I policy itself, as a *policy* defense, limited its liability to that of the owner's statutory right to limit, rather it was contending that this was a federal, *statutory* defense which, under general Louisiana law was not personal to the assured and could be availed of by the underwriter.[19]

---

**17.** Note 22 stated:

We have considered and rejected the appellants' construction of the other clauses which provide as follows:

[i] It is expressly understood and agreed *if and when* the assured has *any interest other than as a shipowner* in the vessel named herein, in no event shall this Company be liable hereunder to any greater extent than *if the assured were the sole owner and entitled to petition for limitation of liability* in accordance with present and future law.

\* \* \* \* \* \*

[ii] The assured shall at the option of this Company permit this Company to conduct, with an attorney of this Company's selection, at this Company's cost and expense and under its exclusive control, a proceeding in the assured's name to limit the assured's liability to the extent, and the manner provided by the present and any future

statutes relative to the limitation of a shipowner's liability.

419 F.2d at 236 (emphasis added) (brackets [i] inserted).

**18.** Rule 8(i) provides:

When a member for whose account a ship is entered in this Class is entitled to limit his liability, the liability of this Class shall not exceed the amount of such limitation.... *See also supra* note 3 and related text.

**19.** This problem of personal-nonpersonal defense brought into play the sometime quaint codal language of La.Civ.Code Ann. art. 2098 (1977):

A codebtor *in solido,* being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.

Faced with this very precise claim the Court then likened this non-policy, *statutory* defense—claiming the right to the shipowner's limitation of liability—to other analogous non-policy defenses held by Louisiana courts to be personal.[20] These include such non-policy defenses such as infancy, coverture, charitable immunity, governmental immunity, bankruptcy, etc. that are not available to the insurer.

Faced with this problem then of importing a non-policy defense—not a defense based upon the terms of the P & I policy—but rather the Louisiana concept of the *statutory* defense of a shipowner's right to limit its liability arising in a direct action, this Court plainly held:

> We therefore hold that limitation of liability *under the federal statute* is a personal defense which cannot be availed of by an insurer under Louisiana law [21].

*Nebel Towing,* 419 F.2d at 238 (emphasis added).

The Court made clear that in this holding it was dealing with a *statutory,* non-policy defense when it stated that:

> There is no question that the Limitation Act was designed to assist the maritime industry and that it was in no way intended to benefit the insurance industry.

*Nebel Towing,* 419 F.2d at 238. The Court continued this emphasis by its further statement:

> It is patent that *statutory limitation of liability* is only available to a shipowner; the status of insurer is not covered by the public policy underlying the Limitation *Act.*

*Id.* (emphasis added).

The result is that *Nebel Towing* dealt solely with an asserted *statutory* defense which the Court, under Louisiana *in solido* principles, held to be "one personal" to the shipowner, not the P & I underwriter. Here, on the other hand, for the very first time this Court faces the problem of a defense, based not upon the owner's (assured's) *statutory* right to limit liability, but rather based on the terms and conditions of the P & I coverage itself. This is an issue not previously ruled upon by this Court and as to which this panel ought to be free of restraints to reach its considered judicial decision. To sum it up: this panel for the present case accepts the *Nebel Towing* holdings of this Court that (i) there is no constitutional conflict between the Federal Statutory Limitation of Liability Act and the Louisiana Direction Action Statute, (ii) the P & I policy no action clause is no defense to a claim under the Louisiana Direct Action Statute, (iii) the application of 28 U.S.C. § 1332(c) (1964) is not controlling, and (iv) the *statutory,* non-policy defense of the vessel owner's right to limit liability is a "personal defense," under the Louisiana Direct Action Statute.

But *Nebel Towing,* not being an impediment to unconstricted adjudication, we should be free to, and ought to hold that Rule 8(i) is clear in its meaning and is a valid, effective term and condition of the P & I coverage (*see* items (b), (c) and (d), Table p. 997. The contrary ruling of the District Court (*see* item (e) $1,813,291.44, Table p. 997) is wrong and the Court should reverse.

I therefore dissent.

## SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS and HILL, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

**20.** Of course, what is and is not a "personal defense" under the Direct Action Statute and La.Civ.Code Ann. art. 2098 (1977) *see supra* note 19, is a question committed solely to Louisiana courts. London Steam-Ship does not challenge that holding in *Nebel Towing.*

**21.** It bears emphasizing that the Court stressed that it was dealing with a defense asserted "under the federal statute" not the P & I policy. *Nebel Towing,* 419 F.2d at 238.