**CROWN ZELLERBACH CORPORATION, Plaintiff-Appellant, Cross-Appellee,**

v.

**INGRAM INDUSTRIES, INC., et al., Defendants-Appellees,**

and

**London Steam-Ship Owners' Mutual Insurance Association, Limited, Defendant-Appellee, Cross-Appellant.**

No. 82–3749.

United States Court of Appeals, Fifth Circuit.

March 5, 1986.

Phillip A. Wittmann, Stephen H. Kupperman, C. Lawrence Orlansky, New Orleans, La., for plaintiff-appellant, cross-appellees.

Robert A. Redwine, New Orleans, La., W.P. Wray, Jr., Baton Rouge, La., for amicus, Traylor, La. Assoc. of Gen. Contractors.

Nigel E. Rafferty, Richmond M. Eustis, New Orleans, La., for Ingram Industries.

Benjamin W. Yancey, Andrew T. Martinez, New Orleans, La., for London S.S. Owners.

Before CLARK, Chief Judge, BROWN, THORNBERRY, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The sole remaining issue [1] for en banc determination is the validity of the provision of a marine protection and indemnity (P & I) policy fixing the underwriter's maximum liability to that of the assured shipowner's judicially declared limitation of liability. Stated obversely, the question is whether the P & I underwriter is liable in excess of the assured shipowner's admitted limited liability. Along the way we will determine the continued vitality of our earlier *Nebel Towing* [2] decision on which the trial court and the panel majority relied. We hold that the underwriter is not liable for the excess and in doing so overrule *Nebel Towing*.

## I.

This appeal grows out of an allision on the Mississippi River between the tow in tow of the tug F.R. BIGELOW and Crown Zellerbach's (CZ) water intake structure. Involved also was the tug's (and owners') maritime limitation of liability proceeding in which CZ brought a Louisiana direct action against prime and excess P & I underwriters of the vessel owner/operator. After trial, the District Court held that Ingram Industries, Inc. (Ingram), the tug owner/operator, was liable, but was entitled to limit its liability to the value of the vessel and the pending freight. The excess P & I underwriter was held liable for nearly $2,000,000 of the portion of CZ's damages that exceeded the limited liability of the vessel owner. We approved the trial court's holding of (i) no "privity or knowledge" by the tug owner, (ii) the valuation of the vessel, (iii) the computation of CZ's damages, and (iv) the award of prejudgment interest calculated from a date later than the accident. However, the Court by divided vote determined that the District Court was free of error in holding the tug owner's underwriter liable beyond the dollar limits fixed, or ascertainable, in the P & I policy.

### How it All Happened

On February 3, 1979, the tugboat F.R. BIGELOW owned (or bareboat chartered) by Ingram, while pushing 15 loaded barges down the Mississippi River in heavy fog and rain, caused its forward lead barge to collide with and damage CZ's water intake structure, located above Baton Rouge, Louisiana. Shortly after this incident, CZ began to repair the structure, but these repairs were interrupted on May 18, 1979, when another tugboat collided with the structure and damaged the remaining portion. The structure was not rebuilt in kind, but was rebuilt in a different form.

CZ filed suit against the tugboat F.R. BIGELOW, and Ingram, her bareboat charterer, in April of 1979. Subsequently, it amended its complaint to include Cherokee Insurance Company (Cherokee), the prime P & I insurer of Ingram, with a policy limit of $1,000,000, and London Steam-Ship Owners' Mutual Insurance Association (London Steam-Ship), excess P & I insurers of Ingram, with a deductible franchise of $1,000,000.

---

**1.** Although under Rule 7 granting of en banc vacated the panel opinion, the Court, without further discussion, lets stand the panel's ruling on issues 1, 2, 3 and 4 (unpublished, *see* notes * and **), 745 F.2d 995, 996, 998 (5th Cir.1984).

**2.** *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230, 1969 A.M.C. 1571 (5th Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 and 419 F.2d at 238, Brown, C.J., dissenting from denial of rehearing en banc.

In its answer to the suit based upon the accident of February 3, 1979, Ingram, the charterer-owner/operator of the F.R. BI-GELOW, sought limitation of its liability to the value of the vessel plus freight then pending. *See* 46 U.S.C. § 183. Ingram stipulated liability for striking the intake structure, and the issues of damages and limitation of liability were tried. Following trial, the District Court entered judgment for CZ in the "total sum" of $3,948,210.31 with prejudgment interest calculated from December 11, 1980. The District Court granted Ingram's prayer for limitation of liability, valued the vessel at $2,134,918.88, and limited the owner's liability to that amount. Since Cherokee's prime P & I policy was for $1,000,000, the District Court decreed the total sum of CZ's judgment as follows:

Table I

| | | |
|---|---|---|
| (a) Total Damages to CZ | | $3,948,210.31 |
| (b) Payable by Owner and Cherokee Prime P & I | $1,025,000.00 | |
| (c) Payable by Owner and London Steam Excess P & I | 1,109,918.88 | |
| (d) Owner's Limited Liability | | 2,134,918.88 |
| (e) Balance by London Steam Excess P & I | | $1,813,291.44 |

Following the entry of judgment, Ingram and its two P & I underwriters made payments up to Ingram's limited liability ($2,134,918.88).

**3.** *See Southern Pac. Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

**4.** *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

**5.** § 655. *Liability policy; insolvency or bankruptcy of insured; direct action against insurer*
No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, *and an action may thereafter be maintained within the terms and limits of the policy by the injured person,* or his or her survivors mentioned in Revised Civil Code Article 2315, or heirs against the insurer. The *injured person* or his or her survivors or heirs hereinabove referred to, at

London Steam-Ship challenged the portion of the District Court's judgment holding that underwriter liable for the amount ($1,813,291.44) of CZ's claim over and above Ingram's fixed limited liability ($2,134,918.88). The panel, by divided vote, affirmed that holding.

### The P & I Coverage

For its protection against claims for damage to piers and other fixed (non-vessel) structures, Ingram, as chartered owner of the tug BIGELOW, had two P & I covers. The prime cover was with Cherokee, with the amount of insurance being specified as $1,000,000. London Steam-Ship, through A. Bilbrough and Company as managers, dove-tailing Cherokee's cover with a deductible franchise of $1,000,000, supplied an excess P & I cover in accordance with its Rules.

### Louisiana Enters the Fray

In what at one time was thought to be the tranquil waters of *Jensen* [3] with its jealous guard of admiralty uniformity unsettled by *Wilburn Boat* [4] and the intrusion of state laws into these sacred waters, our problem comes about by the Louisiana Direct Action statute, La.R.S. 22:655.[5]

their option, *shall have a right of direct action* against the insurer *within the terms and limits of the policy;* and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. *This right of direct action shall exist* whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and *whether or not such policy contains a provision forbidding such direct action,* provided the accident or injury occurred within the State of Louisiana. *Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State.* It is the intent of this Section that *any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured,*

This statute, as its name implies, allows a direct action against a liability insurer for Louisiana-incurred damages. But the statute does not create new Louisiana liabilities. On the contrary, by its own terms, reinforced by Louisiana judicial decisions, the statute imposes liability on the insurer subject "to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State."

## II.

In our much discussed decision of *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230, 1969 A.M.C. 1571, *rehearing denied*, 419 F.2d 238 (5th Cir.1969) (en banc), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), the Court relied in part on the Louisiana Direct Action Statute to affirm the District Court's award of judgment in excess of the limitation value against the underwriter of the vessel at fault.

The P & I policy in *Nebel Towing* did not by its terms limit the insurer's liability to the vessel owner's limited liability. That meant that the P & I underwriter, in its effort to limit its liability, had to contend that as the insurer it had the right to claim the vessel owner's *statutory* right to limit its liability.

In holding the statutory limitation right unavailable to the insurer, the *Nebel Towing* court reasoned as follows: the enigmatic but undeniable *Cushing* [6] decision declined to hold the Louisiana statute to be preempted by the paramount federal maritime power. Therefore, the Court tested the insurer's claim of entitlement to the shipowner's statutory right to limit liability according to the law of Louisiana.

The insurer attempted to rely on a clause in its policy limiting its liability to "such sums as the assured * * * shall have become legally liable to pay and shall have paid on account." This no-action clause, however, directly ran afoul of the Louisiana Direct Action Statute.

> The statute simply voids any policy clause which conditions the right of the injured person to enforce against the insurer its contractual obligation to pay the insured's debt upon, as prerequisite, the obtaining by the injured person of a judgment against the insured.

*Hidalgo v. Dupuy*, 122 So.2d 639, 644–45 (La.App.1960), *quoted in Nebel Towing*, 419 F.2d at 237.

The *Nebel Towing* court also held that the limitation of liability defense was a defense "personal" to the shipowner and could not be availed of by the insurer. *See* LA.CIV.CODE ANN. art. 1801 (West 1985); note 15 *infra*. As we discuss below, this holding was the result of a flawed analogy to Louisiana immunity law and was wholly unnecessary to the *Nebel Towing* decision. *See infra*.

## III.

### *Out of the Fog of Nebel Towing*

It is here that we must part ways with *Nebel Towing*. In a nutshell, the distinction between this case and *Nebel Towing* is a simple one. *Nebel Towing* dealt solely with the contention that the P & I underwriter was entitled to the shipowner's *statutory* right to limit liability. *See* note 9

provided the terms and conditions of such policy or contract *are not in violation of the laws of this State.*

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds

under the omnibus clause, *for any legal liability said insureds may have as* or for *a tort-feasor within the terms and limits of said policy.* Amended by Acts 1958, No. 125; Acts 1962, No. 471, § 1.

LA.REV.STAT.ANN. § 22:655 (West 1978) (emphasis added).

**6.** *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, 1954 A.M.C. 837 (1954).

*infra.* Here the claim is quite different: the P & I underwriter is claiming only that, as prescribed by the Louisiana Direct Action Statute, the terms of its own insurance policy limits maximum liability to the dollar amount for which the shipowner-assured would be liable upon successfully maintaining the right to limit its liability. The P & I underwriter is not claiming the *statutory* right of the assured. To the contrary, it is here claiming only the limitation of the insurance policy defense itself. As we explain below, this policy limitation cannot be contrary to Louisiana law nor to the public policy of the state.

### London Steam-Ship Coverage

London Steam-Ship (known in the parlance as a "P & I Club")[7] promulgated rules which defined its liabilities and defenses.

The uncontradicted record traces the history of London Steam-Ship Rules from 1881–82, when liability was fixed at 30 per entered ton with a limit of 3000 tons, to 1952–53, when the maximum of 3000 entered tons was deleted. The Club realized that, in this day and time of almost unlimited, astronomical liabilities with aggravated uncertainties as to the shipowner's ability successfully to maintain the statutory right to limit liability and the practical demands

of its shipowner members, it was faced with the problem of determining in what manner its total liability exposure could be expressed. Beginning in 1955—long before *Nebel Towing* was decided—this was handled by Rule 8(i):

> When a Member for whose account a ship is entered in this Class, is entitled to limit his liability, the liability of the Class shall not exceed the amount of such limitation....[8]

In sharp contrast to the situation in *Nebel Towing* in which the P & I claimed only the right to a *statutory* defense, London Steam-Ship's excess P & I policy by Rule 8(i) has a policy term which limits its liability to that of the owner's limited liability. This is a *policy* not a *statutory* defense. The P & I insurer is not claiming the owner's *statutory* right to a shipowner's limited liability, but merely the right to assert its *policy defense.*[9]

Since there can be no question that Rule 8(i) is one of the "... lawful conditions of the policy or contract," it brings us face to face with the critical provision of the Louisiana Direct Action Statute that "any action brought hereunder shall be subject to ... the *defenses which could be urged by the insurer to a direct action brought by the insured....*"[10]

---

7. By the deposition of John Hawkes, director of Bilbrough, it is uncontradicted that London Steam-Ship, the "Club," is an association composed of a number of members, all of whom are shipowners, who "severally and individually, not jointly nor in partnership, nor the one for the other of them, but each only in his own name" agree to protect and indemnify *each other* in respect of the vessel entered for protection and indemnity risk in accordance with the Rules of the association.

8. Rule 8(i) continues to cover the situation in which a vessel is entered for part, not full, tonnage:
   > ... or, if the ship is not entered for her full tonnage, such proportion of the said amount as the entered tonnage bears to the gross registered tonnage....

9. The closest the *Nebel Towing* P & I policy came to Rule 8(i) was in the clause quoted in that court's note 22 (*see* 419 F.2d at 236 and requoted note 17, dissenting opinion, 745 F.2d at 1004) which provided:

It is expressly understood and agreed *if and when* the assured has *any interest other than as a shipowner* in the vessel named herein, in no event shall this Company be liable hereunder to any greater extent than *if the assured were the sole owner and entitled to petition for limitation of liability* in accordance with present and future law.
(Emphasis added)
   This clause applied only to the suppositional situation of the assured having an interest other than as a shipowner in the vessel. This suppositions condition could have had no significance in *Nebel Towing* since it was uncontradicted that the insured vessel was under bareboat charter to the assured which the Court properly considered as an owner. *See* 419 F.2d 230, 231 n. 1.

10. *See supra* note 5. This language is reinforced by other provisions of the statute:
   > Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State.

## Direct Action

We start with our decisions which today are still very much intact. For example, *see Degelos v. Fidelity & Casualty Co.,* 313 F.2d 809 (5th Cir.1963) [11] and *Tokio Marine & Fire Insurance Co. v. Aetna Casualty Co.,* 322 F.2d 113, 1964 A.M.C. 308 (5th Cir.1963). [12]

The decisions of the Louisiana courts have been as unambiguous as the language of the Direct Action Statute itself: there must be a legal liability on part of the assured for the insurer to have a direct action liability. In *Burke v. Massachusetts Bonding & Insurance Co.,* 209 La. 495, 24 So.2d 875 (1946), the question was whether under the law of Mississippi a wife had a right of action against her husband's Louisiana liability insurer for a tort that her husband committed against her in Mississippi. The Louisiana Supreme Court stated:

> The statute does not give plaintiff any more rights than she has under the law of Mississippi. It only furnishes her with a method to enforce in Louisiana whatever rights she has in Mississippi. Since she has no cause of action under the law of Mississippi, necessarily Act No. 55 of 1930 confers upon her no cause of action in Louisiana. The mere fact that under the statute plaintiff was able to obtain jurisdiction against her husband's liability insurer in a direct action in this State does not create, as against her husband, *or as against her insurer,* a substantive cause of action that does

not exist under the law of the State where the wrongful act occurred.

24 So.2d at 877 (emphasis added).

*See also Ruiz v. Clancy,* 182 La. 935, 162 So. 734, 735–36 (1935):

> The statute does not purport to interfere with the right of an insurance company to limit the so-called coverage, "in any policy against liability," to "liability imposed upon him [the assured] by law," as this policy provides. *An insurance company therefore, may* —as the company did in this instance—*limit the coverage, or liability of the company, to pay only such sums as the insured shall become obligated to pay by reason of the liability imposed upon him by law.* The attorney for the insurance company contends that the statute would interfere with the freedom of parties to enter into contracts, and would be therefore unconstitutional, if it forbade insurers to limit their so-called coverage in liability insurance policies, so as to cover only the legal liability of the insured. The statute does not purport to do that, by merely giving an injured person a right of action against the insurer, and by compelling the insurer to respond—*within the limits of the policy*—to the obligation of the insured.

(Emphasis added).

In the face of these strong precedents, from both Louisiana and this Court, the contrary result reached in *Nebel Towing* cannot stand. The policy provision 8(i) (*see*

---

It is also the intent of this Section that all liability policies *within their terms and limits* are executed for the benefit of all injured persons ... to whom the insured is liable; and that it is the purpose of all liability policies to give protection ... to all insureds ... for *any legal liability* said insured[s] may have *as or for a tort-feasor within the terms and limits of said policy.*
(Emphasis added).

**11.** In *Degelos* we stated:
Under the Direct Action Statute, the case may proceed against the insurer, but *liability depends on legal liability of the assured.* Whether, as the Act permits, the assured is joined with the insurer, *the standard for recovery is identical.*

313 F.2d at 815 (emphasis added).

**12.** In *Tokio* we stated:
And we are now clear that the direct action insurer *stands as a party-litigant* in exactly the same shoes as the assured.

.  .  .  .  .

The Louisiana Direct Action Statute emphasizes *that it is the liability of the assured which counts. See, e.g.* "It is the intent of this Section that any action brought hereunder shall be *subject* to *all of the lawful conditions of the policy or contract* and the *defenses which could be urged by the insurer to a direct action brought* by the *insured...."*
322 F.2d at 116–17 & n. 8 (emphasis added).

note 8 and related text) is not couched as a claim to the shipowner's *statutory* right to limit liability. What—and all—it says is that we, the P & I underwriters, will pay up to but not beyond the assured's legal liability. Whatever the assured is liable for we will pay, 100% in full with no discount, but no more.

In the face of such a wholesome economic principle there is nothing in *Nebel Towing* that could lead this Court to say—as did the panel and concurring opinion, 745 F.2d 998,—that this is contrary to public policy or, in the words of § 655 "in violation of the laws of [the] state." *See* note 5 *supra*. From the standpoint of Louisiana's concern—reflected in § 655—about the injured victims of a tort, how could an insurance policy be more fair than to say: whatever your (the assured's) liability, we will pay 100% in full without reduction?

And what, from the standpoint of fairness and Louisiana's public policy could be unfair about the P & I policies expressing the insurer's maximum liability, not in terms of dollars,[13] but rather in words which are plain and readily ascertainable;

not in terms of contentions or hopes, but in words of a realized permanent judicial decision?[14]

Nor is there any support to the theory that applying Rule 8(i) is contrary to Louisiana public policy because *Nebel Towing* held the limitation of liability defense "personal" to the shipowner. Influenced greatly by Judge Ellis' lengthy opinion in *Alcoa Steamship Co. v. Charles Ferran & Co.*,[15] the *Nebel Towing* court seized upon the idea of "personal defense" based on Codal Art. 2098.[16] The *Ferran* opinion listed examples of defenses considered "personal" under Louisiana law which could not be asserted by the insurer in a direct action suit:

> These defenses included infancy, LSA–Rev.Stat. 9:571 and *Rouley v. State Farm Mutual Automobile Ins. Co.*, 235 F.Supp. 786, 793 (W.D.La.1964); coverture, *Edwards v. Royal Indemnity Co.*, 182 La. 171, 161 So. 191 (1935) and *Dumas v. United States Fidelity & Guaranty Co.*, 241 La. 1096, 134 So.2d 45, 50 (1961); charitable immunity, *Lusk v. United States Fidelity & Guaranty Co.*,

**13.** Both *Nebel Towing* and the District Court below applied as perfectly valid the dollar limitation prescribed in the P & I policies. For example, the liability of Cherokee, the prime P & I policy, was limited to its stated $1 million coverage (*see* item (b), Table I above). We have obtained and carefully considered all of the record and briefs in *Nebel Towing* including the P & I policy. The P & I policy expressly provided (line 9) that the "amount hereby insured [is] $175,000 as per schedule [of vessels by name as covered], [and] the underwriter … hereby undertakes to pay up to the amount hereby insured … such sums as the assured, as owner of the [vessel covered] shall become legally liable to pay and shall have paid on account of [enumerated liabilities]." *Nebel Towing* did not impose any liability in excess of the $175,000 policy limit.

**14.** There are no problematics. The trial court has spoken without doubt: Ingram, the owner and assured, is not liable beyond the value of the tug.

**15.** 251 F.Supp. 823 (E.D.La.1966), *aff'd*, 383 F.2d 46 (5th Cir.1967), *cert. denied*, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). This case did not involve the problem of the Louisiana Direct Action statute *and* the federal limitation of lia-

bility act. The question was the validity of the traditional "red letter" clause in the ship repairer contract. This Court affirmed the holding that the clause was valid and effective as a defense resulting from the "nature of the obligation." 383 F.2d 46, 56 (5th Cir.1967). The District Court's opinion concerning the *Cushing* case, "personal defense" and limitation of shipowners liability was dicta.

**16.** Article 2098, in effect when *Nebel Towing* was decided, stated:

> A codebtor *in solido*, being sued by the creditor, may plead all exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.
>
> He cannot plead such exceptions as are merely personal to some of the other codebtors.

LA.CIV.CODE ANN. art. 2098 (West 1977).

This was reenacted as article 1801, effective January 1, 1985.

> A solidary obligor may raise against the obligee defenses that arise from the nature of the obligation, or that are common to all solidary obligors. He may not raise a defense that is personal to another solidary obligor.

LA.CIV.CODE ANN. art. 1801 (West 1985).

La.App., 199 So. 666 (Orleans 1941); and governmental immunity, *Brooks v. Bass,* La.App. 184 So. 222 (Orleans 1938), certiorari denied, November 28, 1938. As succinctly stated in *Simmons v. Clark,* La.App. 64 So.2d 520 (1 Cir.1953), "[p]ersonal defenses are such as infancy, interdiction, coverture, lunacy, bankruptcy and the like." 64 So.2d at 523.

251 F.Supp. at 831. *Nebel Towing* then quoted from that opinion:

> Amongst these apparently varied "personal" defenses, one common denominator is discernible—each person possessing a "personal" defense obtained that defense because the law granted it to all members of his class as a matter of public policy. The personal defense attaches to the status. Hence parents, children, husbands, wives, governmental units, charitable organizations, bankrupts, lunatics, interdicts, vessel owners, and the like possess a defense denied their respective insurers.

419 F.2d at 238.

Not mentioned, but still another common denominator, is that in each of these instances the defense is more than that. The nonliability is an absolute immunity, an immunity extended to each of the respective classes and to all of the members of each class. Seen in that light, it is immediately obvious that the class of "vessel owners" does not belong on Judge Ellis' list.[17] The federal right of limitation of liability has been granted to certain vessel owners under certain circumstances as a matter of federal policy, but it is not an immunity. Even for those who satisfy its requirements, the Limited Liability Act recognizes a liability. All the act does is put a ceiling on damages. More importantly, the privilege is not available for all owners or operators of all ships or vessels for all liabilities.[18]

Even for those owners-operators who can qualify for limitation of liability, the limitation provides them with neither an immunity nor an assured defense. To obtain the benefit of the Act the owners must establish a right to it. That involves the always difficult—and often times impossible—burden of establishing that the casualty occurred without the owner's privity and fault, including prevoyage unseaworthiness.[19] The books are filled with hundreds of cases denying limitation of liability.

## IV.

Related to the concept of personal defense which serves as an additional ground for our decision is the fact that Rule 8(i) is a defense that is personal to London Steam-Ship. The defense asserted by London Steam-Ship is not a defense of Ingram, its assured. Indeed, London Steam-Ship is not asserting any defense of Ingram, the owner.

As a policy clause, Rule 8(i) is a defense personal to London Steam-Ship, the underwriter as a solidary obligor. Article 2098 allows a debtor to raise all defenses that "are personal to himself," as this policy defense certainly is. *See supra* note 15. London Steam-Ship may raise this defense without regard to whether Ingram's right to limit liability is a defense personal to it.

> [I]nsurers may assert defenses which result from the nature of the obligation—contributory negligence, assumption of risk, confusion, collateral estoppel and res judicata, for example, as well as those common to all co-debtors.... Ad-

---

**17.** We are unable to find a Louisiana case that has held the federal right to limitation of liability to be a personal defense. In a footnote in *Danzy v. United States Fidelity & Guaranty Co.,* 380 So.2d 1356, 1359 n. 5 (La.1980), the Louisiana Supreme Court mentioned our result in *Nebel Towing* as part of a lengthy survey of personal defenses but did not express its approval or disapproval of that result.

**18.** There are a number of liabilities not subject to limitation. *See* 3 *Benedict on Admiralty* §§ 31–32 (A. Jenner 7th ed. 1985); *see also id.* § 33 (excluding so-called personal contracts which can include warranties, express or implied, as to seaworthiness, charter parties, ship repairers and suppliers).

**19.** CZ continues to argue on appeal that limitation of liability should have been denied to Ingram.

ditionally, *insurers enjoy and frequently assert defenses personal to themselves, such as coverage, policy limits,* and procurement by misstatement of material facts in the application.

*Alcoa Steamship Co. v. Charles Ferran, Inc.,* 251 F.Supp. 823, 831 (E.D.La.1966), aff'd, 383 F.2d 46 (5th Cir.1967), cert. denied, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968) (emphasis added).

This result makes it unnecessary for us to decide whether, in view of the Supreme Court's enigmatic 4–1–4 decision for that day and time only in *Cushing v. Maryland Casualty Co.,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed.2d 806, 1954 A.M.C. 837 (1954), there is yet a final decision on the constitutionality of the Louisiana Direct Action Statute *vis-a-vis* the federal shipowner's limitation of liability statute, 46 U.S.C. § 183 *et seq.*

### Conclusion

*Nebel Towing* is overruled and the District Court is reversed with respect to the liability of London Steam-Ship for amounts in excess of Ingram's limited liability. In all other respects the District Court is affirmed.

REVERSED IN PART, AFFIRMED IN PART.

THORNBERRY, Circuit Judge, specially concurring:

I have had reservations all along about our holding in *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230 (5th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970). *See id.* at 238 (Thornberry, J., voting to grant petition for rehearing en banc). There we held that a shipowner's limitation defense was personal and consequently was not available to

the shipowner's insurer sued under the Louisiana direct action statute. In this case, the insurer inserted a provision in the policy that limited its liability under the policy to the amount of the shipowner's liability after limitation. In effect, the insurer sought to do indirectly what *Nebel Towing* prohibited it from doing directly. Unlike the majority, I have no doubt that *Nebel Towing* precluded an insurer from taking advantage of the shipowner's limitation defense merely by inserting a clause in the insurance policy. *See Crown Zellerbach Corp. v. Ingram Industries,* 745 F.2d 995, 998–99 (5th Cir.1984) (Thornberry, J., specially concurring). The district court was correct in concluding, on the force of *Nebel Towing,* that London Steam-Ship was liable beyond Ingram's limitation amount.

Today, the court en banc overrules *Nebel Towing.* Although I find Judge Tate's dissent persuasive, I join the majority opinion only to the extent that it overrules *Nebel Towing* on the ground that limitation is not a personal defense under Louisiana law.

TATE, Circuit Judge, with whom ALVIN B. RUBIN, POLITZ, JOHNSON and JERRE S. WILLIAMS, join, dissenting:

Almost thirty years ago, in 1954, the Supreme Court of the United States definitively decided that the Louisiana direct action statute and the public policies of Louisiana embodied therein provided the measure of recovery against an insurance company that had insured a vessel involved in a maritime accident, regardless of the liability limits of the Limitation of Liability Act. *Maryland Casualty Company v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954).[1]

---

**1.** *Cushing* involved an attempt to recover damages for the death of five seamen who drowned in a maritime accident. The plaintiffs sued the liability underwriters of the owner and charterer of the ship. Meanwhile, the owner and charterer of the vessel filed a petition in admiralty to limit their liability under the provisions of the Limitation of Liability Act. The federal district court had decided that federal law and the policies underlying the Limitation of Liability Act governed, and refused to give effect to Louisi-

ana's direct action statute. *Cushing v. Texas & P. Ry. Co.,* 99 F.Supp. 681 (E.D.La.1951). The Fifth Circuit held, instead, that Louisiana's direct action statute governed, and that the plaintiffs could proceed against the insurer within the terms and limits of the policy. *Cushing v. Maryland Casualty,* 198 F.2d 536 (5th Cir.1952). A four-member plurality plus Justice Clark's concurrence affirmed this principal ruling of the circuit court. 347 U.S. at 427, 74 S.Ct. at 618. A four-member plurality opinion authored

Fifteen years ago, this court held that the Limitation of Liability Act provides a personal defense to a vessel owner that, under Louisiana law, is not available to a vessel's insurer in a suit brought under Louisiana's direct action statute. *Olympic Towing Corporation v. Nebel Towing Company, Inc.*, 419 F.2d 230 (5th Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970). The basis for the court's decision was that the defense was personal to the vessel owner because permitting the insurer to take advantage of the shipowner's right to limit his liability would have impermissibly thwarted the public policies embodied in the Louisiana direct action statute. *Nebel Towing*, 419 F.2d at 238.

For the past fifteen to thirty years, the admiralty bench and bar of Louisiana have decided and argued cases on the basis of the principles established by these decisions. Additionally, insurance policies have been sold and rates determined on the basis of the principles they embody.

Just recently, the Supreme Court of Louisiana cited *Nebel Towing* with approval in connection with a determination of which personal defenses are not available to an insurer in a direct action. *Danzy v. United States Fidelity & Guaranty Co.*, 380 So.2d 1356, 1359 (La.1980). The only federal reported decision, other than *Nebel Towing*, dealing with the direct action statute of a territorial unit of the United States has likewise concluded that, under the Puerto Rico direct action statute, an insurer cannot avail itself of defenses personal to its insured, including the defense of limitation of liability, and may be held liable up to the full amount for which it has received premiums. *Torres v. Interstate Fire and Casualty Company*, 275 F.Supp. 784 (D.Puerto Rico 1967), cited with approval by *Ramos v. Continental Insurance Company*, 493 F.2d 329, 333 & n. 4 (1st Cir. 1974).

Nevertheless, despite this overwhelming authority, the majority's opinion chooses at this late date to overrule *Nebel Towing* and to cast doubt on the vitality of the United States Supreme Court's decision in *Maryland v. Cushing*. For whatever virtues there may be to the theory that "Admiralty is Ancient and Admiralty is Different," *Merchants National Bank of Mobile v. The Dredge General G.L. Gillespie*, 663 F.2d 1338, 1353 (5th Cir.1981) (Tate, J., dissenting), *cert. dismissed*, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982), there is no warrant, in view of the United States Supreme Court's definitive ruling, for this court, at this late stage, to override the public policy and the laws of the State of Louisiana.

The majority to some extent relies upon an attempt to say that its present holding is based upon the insurance contract provision rather than the owner's personal defense of limited liability. This reasoning was rejected by the Louisiana immunity decisions cited by the majority, which are to the effect that under the direct action statute an insurer could not limit its liability for up to its policy limits by a contract clause providing that its contract insured only those amounts for which the insured himself could be held liable.

Under its terms, the present insurance contract covered the entire loss, as held by the district court. To permit the insurer by its contract clause to invoke the *owner's* statutory limitation of liability, a defense personal of the owner, thwarts Louisiana's policies incorporated in its direct action statute no less than if the insurer had attempted to invoke directly the owner's personal defense of statutory limitation of liability. It contravenes as much the holding of the United States Supreme Court in *Maryland Casualty Company v. Cushing, supra*, that Louisiana's direct action policies outweigh federal limitation of liability policies, for the majority to permit the insurer by language quibbles in its contract

---

by Justice Frankfurter would have affirmed the district court. The writer finds difficulty in

concluding that this ruling was "confusing."

to reduce nevertheless the full loss-coverage afforded by its contract only to that for which the owner-insured can be held liable by reason of the invocation of the owner's personal defense based upon the Limitation of Liability Act.

For these reasons, I respectfully dissent.

