ARMSTRONG, Judge.
In this medical malpractice action, plaintiffs Deborah Descant and her husband Leon Descant, individually and on behalf of their minor daughter, Edith Marie, appeal from a judgment sustaining exceptions of no cause of action and no right of action raised by defendant Lexington Insurance Company (“Lexington”). We affirm.
Deborah Descant first entered Tulane Medical Center Hospital in March, 1989 for the treatment of various gynecological problems when it was determined that she was pregnant. Because of her age and other medical problems, Mrs. Descant and her husband Leon decided that she should be followed and treated at Tulane because of its excellent reputation in the treatment of high risk obstetrical patients. The Descants alleged that during the course of Mrs. Descant’s pregnancy, it became apparent that the baby was unusually, large and her physician, Dr. Eduardo Herrera, discussed the possibility that a caesarean section might be necessary. Mrs. Descant entered the hospital on November 1, 1992 for a serial induction of labor. The Descants contend that as Mrs. Descant’s labor continued for many hours with little progress, they became increasingly concerned about continuing with *215 the vaginal delivery because of the size of the fetus and requested that Dr. Herrera perform a caesarean delivery. Dr. Herrera continued to reassure the Descants that this would not be necessary and eventually delivered Edith Marie Descant vaginally on November 3, 1992. The baby weighed 13 lbs. 4 oz. at birth and suffered a shoulder dystocia during the delivery. The Descants allege that the baby was born with severe brain damage as a result of the delay in delivery.
The Descants filed this lawsuit, individually and on behalf of their minor daughter, Edith Marie, against Tulane Medical Center Hospital and Clinic, Dr. Eduardo Herrera, and several liability insurers of Tulane, including Lexington. The Descants filed their claims first with the Medical Malpractice Review Panel which ruled that there was no breach in the standard of care available.
At the time that the Descants filed their claim, Lexington had in force a claims-made insurance policy issued to the Administrators of the Tulane Educational Fund with a retroactive date of March 1,1986. Lexington was an excess insurer of Tulane, insuring only that amount of hospital professional liability incurred in excess of the $1,000,000.00 per occurrence retained amount agreed to by Tulane.
When Lexington was made a defendant, they filed exceptions of no cause of action and no right of action alleging that due to Louisiana’s Medical Malpractice Act which limited Tulane’s liability to $100,000, the policy provisions of their liability insurance with Tulane never came into effect. The trial court agreed, granting the exceptions, and dismissing the claims of the Descants.
The issue on appeal is whether the trial court was correct in holding that the limitation of liability granted to a qualified health care provider pursuant to La.R.S. 40:1299.41 et. seq. is a defense available to their insurer.
Lexington was joined as a party defendant pursuant to the Louisiana Direct Action Statute, La.R.S. 22:655. That section provides that:
B.(l) [t]he injured person ... shall have a right of direct action against the insurer within the terms and limits of the policy: and, such action may be brought against the insurer alone, or against both the insured and the insurer jointly and in solido
D. It is also the intent of this Section ... that it is the purpose of all liability policies to give protection and coverage to all insureds ... for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy. (Emphasis added).
Appellees argue that the Direct Action Statute is remedial rather than substantive and does not create a cause of action against the insurer. Finn v. Employers’ Liability Assurance Corporation, 141 So.2d 852 (La.App. 2d Cir.1962). The obligation of the insurer is therefore conditional, as it is bound only if the insured is legally responsible for the damages sustained. Dumas v. U.S. Fidelity & Guaranty Company, 241 La. 1096, 134 So.2d 45 (1961). As the court said in Ruiz v. Clancy, 182 La. 935, 162 So. 734, 735 (1935), an insurance company may “limit the coverage, or liability of the company, to pay only such sums as the insured shall become obligated to pay by reason of the liability imposed upon him by law.” Provided the injured party still has a cause of action against the insured, an insurer may be held liable under the Direct Action Statute, even where there is no longer a right of action against the insured tortfeasor. Edwards v. Royal Indemnity Company, 182 La. 171, 161 So. 191 (La.1935).
Because an insurer is liable in solido ■with its insured under the Direct Action Statute, 22:655(B), La.Civil Code Art. 1801 determines which defenses may be raised by the insurer. A solidary obligor, such as an insurer, may raise three types of defense under Art. 1801:
(1) those that arise from the nature of the obligation;
(2) those that are personal to the insurer; and
(3) those that are common to all of the solidary obligors.
An insurer may not raise a defense that is personal to the insured. Defenses which have been held by Louisiana courts to be *216 personal to the insured include interspousal immunity, parental immunity, governmental immunity, charitable immunity, minority, bankruptcy, interdiction, and insanity. Danzy v. United States Fidelity & Guaranty Company, 380 So.2d 1356 (La.1980).
These personal defenses have been granted by law to all members of a class as a matter of public policy. This nonliability translates into an absolute immunity extended to each of the respective classes and to all of the members of each class. Crown Zellerbach Corp. v. Ingram Industries, Inc., 783 F.2d 1296 (5th Cir.1986). The reasons for the adoption of a particular policy may vary. For example, the familial immunities were intended to insulate the family relationship from financial squabbles.
The Descants assert that the limitation of liability defense granted by the Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq., is one that is personal to the health care provider, and may not be asserted by Lexington. Section 40:1299.-42(B)(2) states that “a health care provider qualified under this Part is not liable for an amount in excess of $100,000.00 plus interest thereon accruing after April 1, 1991 ...”
The policy underlying the Medical Malpractice Act is explained in Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992) as an effort:
... to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. As long as a health care provider remains qualified under the Act, the health care, provider and his insurer are liable for malpractice only to the extent provided in the Act. (Emphasis ours).
The courts have acknowledged in a number of cases that the Medical Malpractice Act is a legislative attempt to deal with a growing crisis involving the inability of health care providers to obtain medical malpractice insurance at reasonable rates and a goal of the act was to ease the overall insurance premium burden. Butler v. Flint Goodrich Hospital, 607 So.2d 517, 521 (La.1992); Williams v. Kushner, 549 So.2d 294 (La.1989), Chief Justice Dixon, dissenting at 305-308; Everett v. Goldman, 359 So.2d 1256. 1261, 1268 (La.1978). In view of this often expressed legislative intent to protect the insurers of health care providers, there is no sound basis for denying the limitation of liability defense to insurers such as Lexington.
Because Tulane’s liability under the statute is limited to $100,000.00, appellants have no cause of action against Tulane for any amount above the statutory maximum. As a result of Lexington’s role as an excess insurer of Tulane, Lexington would be allowed to assert the limitation of liability defense as well.
The Descants argue that Lexington’s role as an excess insurer of Tulane was meaningless unless Lexington was to cover Tulane’s liability claims which exceeded one million dollars. Insurers have the right to limit their liability and to impose conditions upon their obligations under the policy in the absence of conflicts with laws or public policy. Fruge v. First Continental Life and Accident Ins. Co. 430 So.2d 1072 (La.App. 4th Cir.1983), writ denied, 438 So.2d 573 (La.1983). The appellant’s argument, however, does not consider the fact that there is still a coverage gap for a large class of cases — those in which damages exceed $500,-000[1] but which do not reach the $1,000,000 mark — even if Lexington could not assert the limitation of liability defense. In other cases where the courts have addressed the role of excess insurer, the controlling consideration in determining when coverage begins is the agreement between the insurer and the insured as represented by the policy. Kelly v. Weil, 563 So.2d 221 (La.1990). For example, where the primary carrier became insolvent, an excess insurer’s coverage did not “drop down” to provide a defense and indemnify *217 insureds from liability. Kelly v. Weil, Id., p. 222. The reduced risk of a secondary or excess insurer is “reflected in the cost of the policy” because under its terms, “liability attaches only after a predetermined amount of primary coverage has been exhausted”. Continental Marble and Granite v. Canal Ins. Co., 785 F.2d 1258 (5th Cir.1986).
For the foregoing reasons, we find that Lexington Insurance Company, the insurer of a qualified health care provider under the Medical Malpractice Act, can assert the limitation of liability defense in order to defeat the appellant’s claim for damages against it under the Direct Action Statute. The trial court properly sustained Lexington’s exceptions of no cause of action and no right of action in dismissing plaintiffs’ claim.
AFFIRMED.

. Tulane would be liable for an amount not to exceed $100,000 pursuant to LSA-R.S. 40:1299.-42(B)(2).
The Patients Compensation Fund would be liable for any amounts over $100,000 as described in LSA-R.S. 40:1299.42(B)(3)(a), but not to exceed the maximum amount recoverable of $500,-000. LSA-R.S. 40:1299.42(B)(1).